CREWS et al. v. POWERS et al.   (No. 891.)

(Court of Civil Appeals of Texas.   Amarillo. March 1, 1916.)

1. STIPULATIONS ⚖=18(6)—DOCUMENTARY EVIDENCE—AGREEMENT TO ADMIT.

A party agreeing to admit a field note book would preclude him from moving to strike it from the evidence after its recitals were found to be unfavorable to him.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 48–50; Dec. Dig. ⚖=18(6).]

2. APPEAL AND ERROR ⚖=548(4)—REVIEW—BILLS OF EXCEPTION.

The action of the court upon motion to strike out evidence should be presented by bills of exception in order to be reviewed by the Court of Civil Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2439; Dec. Dig. ⚖=548(4).]

3. TRESPASS TO TRY TITLE ⚖=40(6)—EVIDENCE—FIELD NOTE BOOK.

In trespass to try title, where the trial court's findings showed that both parties agreed that a field note book should go into the record in so far as it related to certain surveys in a certain block, the relevant entries contained therein should have been considered by the court in passing on the issues.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 60; Dec. Dig. ⚖= 40(6).]

4. APPEAL AND ERROR ⚖=1010(1)—FINDINGS—REVIEW.

In trespass to try title involving a dispute as to boundaries, tried to the court without a jury, findings of fact, being peculiarly within the province of the trial court, supported by the evidence, would not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981; Dec. Dig. ⚖= 1010(1).]

Appeal from District Court, Childress County; J. A. Nabers, Judge.

Trespass to try title by S. K. Powers and others against C. E. Crews and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Jos. H. Aynesworth and W. G. Gross, both of Childress, for appellants. M. J. Hathaway and W. B. Howard, both of Childress, for appellees.

HALL, J. This is a boundary suit. The allegations in the petition are in the form of trespass to try title to survey No. 2, in block No. E, in Childress county. The land is described in the petition as beginning at a point in the N. boundary line of survey No. 15, of the F. P. Knott surveys 400 varas S., 80° 30' east from its N. W. corner; thence N. 80° 30' W., 400 varas with the north boundary line of said survey No. 15, a cedar post marked "XI"; thence N. 76° W., 979 varas, with the N. boundary line of survey No. 16, F. P. Knott, original survey, to a point on top of a sand hill, from which a china berry tree 18 inches in diameter bears S. 50° E., 6 varas; thence S. 76° 30' W., 979 varas, with the N. B. line of survey No. 17, F. P. Knott, a pipe line, the N. E. corner of survey No. 18, F. P. Knott; thence S. 70° W., 1,011 varas, with the N. B. line of said survey No. 18, to a set stone in the E. B. line of survey No. 19, F. P. Knott, original surveys; thence N. 488 varas with the E. B. line of said survey No. 19, to a pipe N. E. corner of same; thence S. 78° 30' W., 970 varas, with the N. B. line of said survey No. 19, to a pipe set in the S. bank of Red river, the N. E. corner of survey No. 20, F. P. Knott original survey; thence N. 59° 52' E., 1,099 varas, with the meanders of said

river, a point; thence N. 81° 19' E., 961 varas, with the meanders of said river, a point; thence E. 950 varas with the meanders of said river, a point; thence S. 77° 39' E., 972.4 varas, with the meanders of said river, a point; thence S. 38° 29' E., 637 varas, with the meanders of said river to the place of beginning, containing 338.8 acres of land.

The land described lies immediately north of the F. P. Knott surveys in Childress county, and is bounded on the north by Red river. Appellees claim the land as original, unappropriated public domain, which had been surveyed and sold to them by the state as public school land. Appellants insist that the land in controversy is a part of the various F. P. Knott surveys described in the field notes; in other words, that the F. P. Knott surveys, by their original calls, extended north to the river bank, and that no vacancy exists north of said surveys, which the state could sell to appellees.

Defendants below answered by general denial: That the lands in controversy were included in the lands owned by them, and that the northern boundary of their surveys was the south bank of Red river. They deny that the cedar post alleged to be an original corner, as designated in the second call in the petition, was an original corner; that the northern boundary lines of the several Knott surveys are correct calls and that the original calls, marking, and corners, were on the bank of the river; that said land was formerly public domain and was sold by the state to F. P. Knott, and surveyed in sections of 640 acres each, as required by law; that said surveys were made by the proper officers and field notes thereof duly returned to the land office and patents issued; that, in the applications for the purchase of said land made by the said Knott, each survey was described to follow the meanders of the south bank of Red river, and the field notes thereof show that they were surveyed accordingly; that the field notes in the patents call for the south bank of the river, and it was the intention of the said Knott, in making such application, to bound the same on the north by the south bank of the river; that it was likewise the intention of the officer making the survey to comply with the law and bound the same on the north by the south bank of the river; that it was also the intention of the state in approving the field notes, and in the issuance of the patents, to part with all its right, title, and interest therein, to the south bank of the river. They claim through mesne conveyances under the said Knott, alleging that they acquired the lands, relying upon the records of the surveyor's office, of field notes returned to the General Land Office and set out in the patents, and have been in quiet and peaceable possession thereof from the date of the original sale to F. P. Knott, up to this time.

A jury being waived, the court tried the case, rendering judgment for the plaintiffs below. The substance of the findings of facts and conclusions of law we state as follows: This case involves the title to some 338 acres of land on the south bank of Red river, in Childress county, being, if plaintiff's contention is correct, state school land, sold to plaintiffs; and, if defendants' contention could be sustained, it is a part of the north end of surveys 15, 16, 17, 18, and 19, of the F. P. Knott sections, to which defendants have title. The field notes of surveys 15 and 16, at their common north corner, call for a stake marked ✕ with a cottonwood and a chittim bearing tree, giving course to said trees, but not distance. These field notes are of a survey made by T. Windsor Robinson, in May, 1882. At a point in the valley at the southeast corner of the land in controversy, there is now to be found a cedar stake, marked ✕, by the side of which there is an iron pipe put in by one Crews; that is, where Crews put in the iron pipe, reversing the call for course, and running from a cottonwood marked ⟨ as it now shows, would miss this corner 38 varas to the east of it. No chittim can be found, but there is a chittim stump which will fit within a few feet the call for course to a chittim running in a westerly direction. In the course called for in the field notes of survey 16, from this stake, at the distance called for in said field notes for the northwest corner of said survey 16, there is found a china tree which fits within a few varas the call in the field notes at this point. This tree is mostly buried in a sand hill, and some of the witnesses have dug down about 16 feet into the sand and to the roots of the tree, in an effort to find marks on it, but discovered none which could be identified as surveyor's marks. Continuing courses called for for the north line of 17 and 18, to the northwest corner of said survey 18, and thence north 488 varas to the northeast corner of 19, and south 78½° west along the north lines of surveys 19, 20, 21, and 22, to the northwest corner of 23, would pass south of a salt spring and along a rocky bluff, which is the south bank of Red river along the north lines of 20 and 21. Following the river bank about a mile and leaving it at about the northeast corner of 23, the course pursued throwing the line away from the river, and at the northwest corner of 23 as thus located is found the original corner, fully identified by bearings called for in the original field notes. The field notes of surveys 16, 17, 18, and 19 call for stakes on the bank of Red river, and to meander said river. But the line above described does not meander said river, but runs for the most part along the south line of the land in controversy, and nearly half a mile south of the river. I find, also, that in 1884 there was a stake, not marked, about 30 yards north and east of the cedar post, and iron stake,

first above described. It is not there at this time and its exact position is not certain. By running course and distance north 76° west, 961 varas, as called for in the field notes of the north line of 16, will reach a basin in the sand hills and continuing will, on the north side of survey No. 19, follow a rocky bluff and pass over or close to a salt spring, passing into the river for about a mile and a half, reaching the bank again at the northeast corner of 23, or north of where it is now found and identified, about 300 varas, at which point there is some timber. I also find that it is conclusively shown by the evidence that Red river, along the north boundary of the land in controversy, has its banks in substantially the same place as when the original survey was made in May, 1882. I find from this evidence that following the footsteps of the original surveyor would be the lines first above described; that before he reached the northeast corner of 16 he had left the river bank and cut across the bend for some reason; and that he did not thenceforth meander the river, nor was his line a meander line, until he again reached the river at a point just before reaching the northwest corner of 19. I also find that this line is shown to be the line actually run on the ground by the original surveyor, by all the other evidence in the case, including the maps herein introduced, showing the position of surveys throughout the block; that in theory it would locate these surveys, 16, 17, 18, and 19, on the river bank, would change the south line of said surveys, disturbing and pulling them apart from their surveys on the south, or would pull the whole block of surveys north into Red river, and north of the original corners. On the whole, I find that the line first described herein is the original line run by T. Windsor Robinson, the original surveyor.

The court then applies the Bertillon system, "to the face of nature instead of to the face of some human being," and concludes that any "one finding a cedar stake marked $\times$ in the neighborhood of where a stake or post marked $\times$ was called for in the field notes as a corner might have a suspicion that such was the corner; should he find in the neighborhood a cottonwood marked $<$ and which said mark might at one time have been a part of an $\times$, and find that the same field notes call for such a cottonwood, and further find that the course called for in the field notes was reasonably close to the course actually found, the suspicion would likely become strengthened; then, examining the field notes, should he find that they also call for a chittim, a certain course from the said corner, he finds a chittim stump, the suspicion would begin to ripen into a belief; and then should he run from this stake the course and distance called for in the field notes, and there find a china tree reasonably corresponding to that called for

in the field notes, the belief would naturally ripen into a conviction; then continuing should he afterward, passing along a rocky bluff on the bank of a river, where same is called for in the field notes, arrive at a point where there is a corner so well identified by marked trees that it is not questionable, then his conviction would become a certainty." The court concludes as a matter of law that when a line can be identified by the footsteps of the original surveyor it is the correct line of the survey; that a meander line may be placed back a reasonable distance from a stream and nevertheless be a meander line, and include in the grant the line to the stream, but when it is so far back, for instance nearly half a mile as in this case, as to show it is not in fact a meander line, but a cut-off, and the footsteps of the surveyor are actually found crossing the cut-off, then it is not in fact a meander line, and the surveyor is presumed to intend to locate the line where he actually does locate it. While the law presumes the surveyor does his official duty, and in making surveys all calls are correct, yet this presumption may be overcome by proof positive to the contrary. The fact that the Knott surveys are made four times as long as they are wide has probative value to show that they front on a stream, and also that the call for a stream shows, not conclusively however, that he did go to the stream, and that, if in future years the river is found further away, it might very well be presumed, and should be, that the river has changed its course so as to harmonize the facts found with the calls, rather than to say they are incorrect. Yet notwithstanding all these presumptions, when it is shown to a moral certainty that the river has not changed its course, and also to such certainty that the surveyor did not follow the meanders of the stream, it is the duty of the court to follow the certain footsteps of the surveyor, and there locate the line. The evidence shows that the defendants have their full quota of land, without adding to it the land sued for herein; that it is not a state of facts which could possibly include any excess north and south, there being no original corners on the south to hold an excess, so that it is only a question of showing defendants' land north of the river and leaving that amount of land on the south out of his survey, or letting his survey remain where Robinson and Crews and all other surveyors have heretofore put it, without disturbing the south line in any way; they still having fully 640 acres.

[1, 2] The first three assignments of error insist that the court erred in considering the entries in what is designated as "Little Book M." This seems to be the field note book, made by T. Windsor Robinson, at the time of the original survey, and was called for by appellants' counsel. It appears from the record that, after the pleadings had been

read to the court, one of the attorneys for appellants, who had requested the court to bring the note book to Childress, announced that he was going to introduce it in evidence. He afterwards objected to the book, when the county surveyor was being interrogated, with reference to some matters contained in it, and withdrew his objections and agreed that it might go in as evidence. The trial judge states in his findings of fact that, before adjourning in the evening, both parties agreed that the book should go into the record in so far as it related to surveys 14 to 23 of the F. P. Knott block. If we could properly consider the objection as presented here, we think appellants' agreement to admit the book would preclude them from moving to strike it from the evidence, after its recitals were found to be unfavorable to them. Kempner v. Beaumont Lumber Co., 20 Tex. Civ. App. 307, 49 S. W. 412. This matter, however, is not properly presented. The action of the court upon motion to strike out evidence in order to require review in this court should be presented by bills of exception, and no bill whatever is found in the record. Holt v. Cave, 38 Tex. Civ. App. 62, 85 S. W. 309.

[3] In the present state of the record, we must take the court's statement of the facts relating to the introduction of "Little Book M" as true, and conclude that the relevant entries found in it should have been taken into consideration by the court in passing upon the issues. In the consideration of several boundary suits, we have learned from a review of the work of the pioneer surveyors in this part of the state, done when the public domain was almost limitless and lands were barely worth the cost of surveying and pre-empting them, that lines were not run and corners and calls were not fixed and made with that degree of care and accuracy which the law required. Time and the demand for fuel and fence posts have in most instances caused the disappearance of bearing trees, and the shifting sand dunes of the river bottoms and the erosion of river banks have frequently changed the face of nature to such an extent as to render the location of lines and corners a matter of much doubt.

[4] We think the court's findings of fact are supported by sufficient evidence, even without taking into consideration the facts shown in "Little Book M." The "gun barrel corner," being the northeast corner of section 41, is an undisputed, long and well established corner in that neighborhood. The beginning corner adopted by the court, and concerning which the testimony is sharply conflicting, we think is sufficiently established by the course and distance, reversing the calls from the "gun barrel corner." There can be no controversy with reference to the rules of law quoted in the briefs of parties,

and the whole question has resolved itself into one of fact. This being peculiarly within the province of the trial court, we do not feel called upon to disturb his findings, since we think they are supported, not only by sufficient evidence, but by a preponderance thereof. Under the evidence, as introduced, the court could have located the line according to the contention of either party; but he has seen fit to disregard the evidence of several witnesses which tend to locate the line north of where it is fixed by his findings, and we feel it our duty to adopt his conclusion as our own.

The judgment is therefore affirmed.